McMahon, Respondent, vs. Eau Claire Water Works Company, Appellant.

*March 23 — April 7, 1897.*

*Damages: Cross-examination: Remarks by court: Waiver of written charge.*

1. In an action for a personal injury caused by negligence, a verdict for $5,000 damages is *held* not excessive, where there was evidence that the plaintiff was suffering from paresis as a result of the injury.

2. Parties should be liberally indulged in the exercise of the right to cross-examine witnesses, so long as anything of value is likely to be brought out; but the court has a large discretion in the matter, and its exercise thereof to shut out unnecessary and useless questions will not be *held* error, where no substantial rights of the appellant appear to have been prejudiced thereby.

3. A judgment will not be disturbed because of remarks made by the court to counsel, during the trial, relative to his mode of cross-examining witnesses or the unnecessary repetition of questions, where it does not affirmatively appear that the appellant was prejudiced thereby.

4. If, when a jury returns into court for further instructions, the stenographer is absent, but one of defendant's counsel is present, and he keeps silent when the court remarks that instructions cannot be given in the absence of the stenographer without the consent of parties, his silence must be deemed to be consent, and a waiver of the necessity of a written charge.

Appeal from a judgment of the circuit court for Eau Claire county: W. F. Bailey, Circuit Judge. *Affirmed.*

The defendant owned a system of waterworks in the city of Eau Claire, with the usual system of pipes along the city streets. At one place in the street called Galloway street the Eau Claire river, at a time of freshet, had washed out a part of the street and uncovered the defendant's water pipe. While the defendant was repairing and relaying its pipes, and before it had completely filled the gully made by the freshet and the excavations made for relaying its pipe, a fire occurred in the nighttime. The plaintiff was a fireman. He rode to the fire on the hose cart, as was the usual means of getting to fires. While being driven rapidly along Galloway street, towards the fire, the horses stumbled in the sand thrown up in making the excavation. The plaintiff was thrown off the hose cart, and against the side of the excavation, and injured. The negligence claimed was the failure to place sufficient barriers about the excavation to warn persons upon the street and prevent approach to it. There was a general verdict for the plaintiff for $5,000. A motion for a new trial was overruled, and judgment given for the plaintiff upon the verdict, from which the defendant appeals.

*H. H. Hayden*, for the appellant.

*T. F. Frawley*, for the respondent.

NEWMAN, J. Six alleged errors are discussed in the appellant's brief,— one relating to the amount of damages found by the verdict; five relating to matters of practice arising upon the trial.

1. Are the damages excessive? The damages assessed by the jury are large, disproportionate to the apparent seriousness of the injury. Yet there is much testimony of physicians tending to show that the real injury is much more serious than is apparent by simple observation. Such testimony tends to show that the plaintiff's injuries are to the nervous system, to the brain and spinal cord; that they have

caused paresis or progressive paralysis, which is incurable. It is impossible, under this evidence, to say that the damages are excessive.

2. Was it error to forbid further cross-examination of the plaintiff? The right of cross-examination is an important one. It may aid greatly in eliciting the truth, and in giving proper estimation of the weight and value of testimony. It should be indulged by the court liberally, so long as it seems to promise to lead to the discovery of truth or the elucidation of the matter under investigation. But it is a right which is liable to be abused, either through the overzeal of the cross-examiner or the natural excitement of the trial. So it must be subject to the control and discretion of the trial judge. When the indulgence of counsel in profitless cross-examination goes so far as to become an obstruction to the further progress of the trial, it may become necessary for the trial court to intervene in order to prevent the frustration of the trial. A large measure of discretion must be permitted to the trial judge in this behalf, else the time of the court may be squandered, and the rights of litigants frittered away, by vain repetitions and irrelevant investigations. The particular matter on which the counsel was pressing the witness when the court intervened was the question: "How far from the edge of the ditch was the front wheel,— the north front wheel?" The witness had explained that, owing to the darkness and the confusion and the pain of his injury, he had taken little notice of the situation. He answered the question: "I don't know." It was immediately followed by this: "According to your best recollection, how far was it?" The court then intervened with a remark to the effect that it was too unimportant to spend time upon every trivial detail, especially as the witness had already explained that he had no clear recollection of the matter. The counsel excepted to the remark of the court, and proceeded with the cross-examination. It is not evi-

dent that counsel was denied the privilege of any cross-examination which had a reasonable promise of benefit to his client.   The matter out of which the incident arose was of little relevance and trifling importance, and its pursuit promised nothing of value.   It was no error.

3. Were the remarks addressed to counsel by the court error?  The court, several times during the trial, addressed to the counsel impatient and caustic remarks, in criticism of his method of the cross-examination of witnesses, and the waste of time produced by it.  After the witness James Looby, who was the driver of the hose cart on the occasion of the accident, had been examined in chief, and before the commencement of his cross-examination, the judge said to the defendant's counsel, " All you can go into with this witness on cross-examination is as to the manner in which he drove;" and during the cross-examination said to defendant's counsel: " I will not allow you to take advantage, and make the plaintiff's witness your witness; when your turn comes you may call him."  And during the cross-examination the court said to defendant's counsel: " It doesn't seem to me we ought to take up the time with these questions which are mathematically determined.  You have your map here.  It has been measured, and the mere estimate of a witness that hasn't measured it will go for naught when you demonstrate it to a mathematical certainty. . I wouldn't take up the time, but he may answer."  And at another time during the cross-examination the court stated to defendant's counsel, referring to the cross-examination: " Now, I guess we will shut off.  I want to tell you, life is too short. Simply because the court has ruled against you on this question, if you seek to prolong it and annoy the court and take up time, you won't make any progress.  I refuse to allow the cross-examination to proceed any further."  Defendant's counsel then stated: " We desire to examine him on the depth of the ditch at the place where plaintiff was first seen

McMahon vs. Eau Claire Water Works Co.

by the witness." By the court: "He has stated that." By defendant's counsel: "I do not think he has." By the court: "Well, if he has not, I will exclude it now." Defendant's counsel then took an exception, and the court stated: "I am going to stop these long, useless cross-examinations." Defendant's counsel took an exception to such remark, and the court then further stated: "Mr. Hayden, as I have told you before, if you had more discretion and less assurance you would get better results,"—to which remark defendant's counsel took exception. And during the cross-examination of the plaintiff the defendant's counsel asked plaintiff in regard to the relative situation of the hose cart with the ditch, and the court stated to defendant's counsel: "I don't want to be constantly ruling upon these matters; but it is absolutely unimportant to spend fifteen or twenty minutes upon every little technical detail of that transaction that does not bear upon the main question. It is taking up unnecessary time, and I don't think it accomplishes any good purpose. The witness has already told you that he has no distinct recollection upon the question. What is the use of asking him any further about it? That precludes any further questioning. If he has no distinct recollection, if he should make a statement under the pressure of cross-examination, that it was probably such a distance, the testimony would not amount to anything,"— which remarks were excepted to by the defendant.

It is claimed that these remarks, under the circumstances in which they were made, were prejudicial to the defendant's case and were error. It would, perhaps, be asking too much of human nature to expect the trial judge to be always equable and bland under the irritating infliction of long drawn out cross-examinations upon trivial details, with unending iteration, especially when the judge feels that it is, in part, for the purpose to "annoy the court and to take up time." One who has not endured such inflictions will scarcely

McMahon vs. Eau Claire Water Works Co. ,

appreciate the exasperation of it. No doubt this feeling may be produced by a cross-examination conducted in entire good faith, but with too little wise discretion. Somewhat must be conceded to the trial judge if his remarks are a little fervid and tinged with some slight modicum of sarcasm. It is not impossible that these remarks of the judge may have had an influence prejudicial to the defendant's case. But the burden is on the party who alleges error to establish it clearly. Evidently the remarks were not entirely unprovoked. It cannot be known, here, how much of such prejudice as may have been excited was due to the indiscreet conduct of counsel. The judgment cannot be disturbed on this ground.

4. The jury returned to the court room for further instructions, which were given orally, in the absence of the stenographer and of the defendant's leading counsel. One of the defendant's attorneys, however, was present. The court remarked that instructions could not be given in the absence of the stenographer without the consent of the parties. Defendant's attorney was silent. No doubt, in such circumstances, such silence should be deemed to be consent. It was a mere matter of practice. Consent waived the necessity for a written charge.

5. The court intervened about the cross-examination of the witness Looby. Perhaps what has been already said sufficiently exhibits the force of this exception. The cross-examination seems to have been needlessly and exasperatingly attenuated and long drawn out. The court might well enforce the rule which confines the cross-examination to matters shown in the examination in chief.

6. The plaintiff, as a witness, was permitted to testify that all the statements which he had made to his physicians were true, under objection. The subject was pursued no further. It was not shown, nor attempted to be, what statements he had made to the physicians. Nor did they testify to sub-

jective symptoms. If error, it was harmless error. No error is found which requires a reversal of the judgment.

*By the Court.*— The judgment of the circuit court is affirmed.